IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| NIC R., <br><br> Plaintiff, <br><br> v. <br><br> KILOLO KIJAKAZI, ACTING COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, <br><br> Defendant. | No. 3:22-cv-00106-K-BT |

### FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE

Before the Court is Plaintiff Nic R.'s[1] civil action seeking judicial review pursuant to 42 U.S.C. § 405(g) of a final adverse decision by the Commissioner of Social Security. *See* Compl. (ECF No. 1). The District Court referred the case to the United States magistrate judge for pretrial management under 28 U.S.C. § 636(b) and a standing order of reference. (ECF No. 4). For the reasons explained below, the District Court should AFFIRM the Commissioner's decision.

### Background

Plaintiff suffers from a variety of alleged physical and mental impairments, including major depressive disorder, panic disorder without agoraphobia, generalized anxiety disorder, scoliosis, pain and swelling in various joints, erosion

---

[1] The Court uses only Plaintiff's first name and last initial as instructed by the May 1, 2018 Memorandum Re: Privacy Concern Regarding Social Security and Immigration Opinions issued by the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

1

of the joints, and rheumatoid arthritis. Pl.'s Br. 3 (ECF No. 16) (citing Tr. 834 (ECF No. 14)); 5 (citing Tr. 703); 6 (citing Tr. 699-700); 7-8 (citing Tr. 1030); 9 (citing T. 37). Plaintiff has at least a high school education and past work experience as a retail food deliverer and store cashier, but Plaintiff has not engaged in substantial gainful activity since August 29, 2019—the date Plaintiff applied for disability insurance benefits (DIB) and supplemental security income (SSI). Tr. 16, 23. Plaintiff was 25 years old on the alleged disability onset date. Tr. 23.

After Plaintiff's applications for DIB and SSI were denied initially and on reconsideration, Plaintiff requested a hearing before an Administrative Law Judge (ALJ). Tr. 11. The hearing took place on February 26, 2021.[2] Tr. 16. And on June 3, 2021, the ALJ issued a decision finding that Plaintiff has not been under a disability within the meaning of the Social Security Act from August 29, 2019, through the date of the decision, and thus Plaintiff is not entitled to DIB or SSI. Tr. 24.

Specifically, the ALJ found Plaintiff had severe impairments of "rheumatoid arthritis; degenerative changes of the hands, wrists, feet, right ankle, and cervical spine; scoliosis; major depressive disorder; bipolar disorder; posttraumatic stress disorder; other specified obsessive-compulsive and related disorders; generalized anxiety disorder; dependent personality disorder; and borderline and avoidant personality features," but that Plaintiff did not have an impairment or a combination of impairments that met or medically equaled the severity of any

---

[2] Due to extraordinary circumstance presented by the Coronavirus Disease 2019 (COVID-19) Pandemic, all participants attended the hearings by telephone. Tr. 11.

listed impairments in the Social Security regulations. Tr. 14. The ALJ also determined that Plaintiff had the Residual Functional Capacity (RFC) to perform a limited range of light work, and that Plaintiff is limited: to frequent bilateral handling; occasional interaction with the public; and a goal-oriented work setting, rather than one that requires a specified pace be maintained consistently throughout a workday. Tr. 15. The ALJ further determined that Plaintiff was unable to perform any past relevant work, but that given Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff could perform. Tr. 23. Based on the testimony of a vocational expert (VE), the ALJ concluded that Plaintiff could work as a mail clerk, laundry sorter, and gasket inspector, and that these jobs exist in significant numbers in the national economy. Tr. 24.

Plaintiff appealed the ALJ's decision to the Appeals Council. *See* Tr. 5. However, the Appeals Counsel denied review. *See* Tr. 1. Plaintiff then filed this action in federal district court seeking judicial review of the ALJ's decision. In two general grounds, Plaintiff argues that the ALJ's decision is not supported by substantial evidence because: (i) the ALJ erred in failing to include Plaintiff's alleged limitation of "performing repetitive activity for 30 minutes" in the RFC and hypothetical questions to the VE; and, (ii) the ALJ substituted her own lay interpretation of the medical data or record and her own opinion to determine the effects of Plaintiff's impairments on Plaintiff's ability to use Plaintiff's upper extremities. Pl.'s Br. 13, 19.

3

## Legal Standards

Judicial review of the Commissioner's findings is limited to whether the decision to deny benefits is supported by substantial evidence and whether the proper legal standards were utilized. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (citing 42 U.S.C. §§ 405(g), 1383(c)(3)). Substantial evidence is defined as "that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla, but it need not be a preponderance." *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). The reviewing court does "not reweigh the evidence, try the issues de novo, or substitute" its own judgment, but rather scrutinizes the record as a whole to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236. An "ALJ's decision is not subject to reversal, even if there is substantial evidence in the record that would have supported the opposite conclusion, so long as substantial evidence supports the conclusion that was reached by the ALJ." *Corpany v. Colvin*, 2014 WL 1255316, at *9 (N.D. Tex. Mar. 26, 2014) (citing *Dollins v. Astrue*, 2009 WL 1542466, at *5 (N.D. Tex. June 2, 2009)).

"Absent an error that affects the substantial rights of a party, administrative proceedings do not require 'procedural perfection.'" *Wilder v. Colvin*, 2014 WL 2931884, at *5 (N.D. Tex. June 30, 2014) (quoting *Taylor v. Astrue*, 706 F.3d 600, 603 (5th Cir. 2012)). "The ALJ is not required to discuss every piece of evidence in the record nor must the ALJ follow formalistic rules of articulation." *Hunt v. Astrue*, 2013 WL 2392880, at *7 (N.D. Tex. June 3, 2013) (citing *Castillo v.*

*Barnhart,* 151 F. App'x 334, 335 (5th Cir. 2005)); *see also Falco v. Shalala,* 27 F.3d 160, 164 (5th Cir. 1994) ("That [the ALJ] did not follow formalistic rules in Plaintiff articulation compromises no aspect of fairness or accuracy that Plaintiff process is designed to ensure."). "Procedural errors affect the substantial rights of a claimant only when they 'cast into doubt the existence of substantial evidence to support the ALJ's decision.'" *Wilder,* 2014 WL 2931884, at *5 (quoting *Morris v. Bowen,* 864 F.2d 333, 335 (5th Cir. 1988)). "Remand is required only when there is a realistic possibility that the ALJ would have reached a different conclusion absent the procedural error." *Id.* (citing *January v. Astrue,* 400 F. App'x 929, 933 (5th Cir. 2010)).

## Analysis

According to Plaintiff, the ALJ concluded—consistent with Dr. Fan's medical opinion—that Plaintiff can perform repetitive activities with Plaintiff's upper extremities or hands for <u>only</u> 30 minutes at a time. Plaintiff thus argues that the ALJ's disability determination is not supported by substantial evidence because the ALJ failed to include such a limitation in Plaintiff's RFC or in the ALJ's hypothetical questions to the VE. Pl.'s Br. 13, 19. Plaintiff contends the ALJ failed to faithfully incorporate the medical evidence of record into her findings and impermissibly relied her own lay interpretation of the medical data and her own opinion to determine the effects of Plaintiff's impairments on Plaintiff's ability to use Plaintiff's upper extremities. The Commissioner disputes Plaintiff's characterization of the ALJ's decision because the ALJ properly found Dr. Fan's

5

medical opinion regarding Plaintiff's ability to use Plaintiff's hands to be "persuasive in part." The Commissioner argues that the ALJ's RFC determination that Plaintiff can "frequently handle bilaterally" is substantially supported by the record. *See* Def.'s Br. (ECF No. 17).

The Commissioner is correct; the ALJ did not conclude that Plaintiff was limited to only 30 minutes of repetitive activity. Further, substantial evidence supports the RFC determination. Therefore, none of Plaintiff's arguments support remand; the Court should affirm the ALJ's decision.

I. The ALJ did not adopt Dr. Fan's medical opinion nor fail to include it in the RFC.

An ALJ's RFC analysis determines the most that a person can still do despite recognized limitations. 20 C.F.R. § 404.1545(a)(1). The RFC determination is a "combined medical assessment of an applicant's impairments with descriptions by physicians, the applicant, or others of any limitations on the applicant's ability to work." *Hill*, 2020 WL 6370168, at *3 (cleaned up) (quoting *Hollis*, 837 F. 2d at 1386-87). It "is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." SSR 96-8p, 61 Fed. Reg. 34474, 34475 (July 2, 1996). An individual's RFC should be based on all relevant evidence in the case record, including opinions submitted by medical sources. 20 C.F.R. § 404.1545(a)(3); SSR 96-8p, *supra*.

"The ALJ [also] does not need to comment on every piece of evidence, but only must build an accurate and logical bridge between the evidence and the final

6

determination." *Id.* "[L]ess weight, little weight, or even no weight may be given to [a] physician's testimony" for good cause. *Greenspan*, 38 F.3d at 237. Recognized good causes include "disregarding statements that are brief and conclusory, not supported by medically acceptable clinical laboratory diagnostic techniques, or otherwise unsupported by the evidence." *Id.; Newton*, 209 F.3d at 455 ("[An] ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion.") (quoting *Paul v. Shalala*, 29 F.3d 208, 211 (5th Cir. 1994)); *see also* 20 C.F.R. § 404.1520b(b) ("We consider evidence to be inconsistent when it conflicts with other evidence, contains an internal conflict, is ambiguous, or when the medical evidence does not appear to be based on medically acceptable clinical or laboratory diagnostic techniques."). "There is no requirement that an ALJ's RFC finding must mirror or match a medical opinion." *Robert D.D. v. Kijakazi*, 2022 WL 16935248, at *4 (N.D. Tex. Oct. 31, 2022) (quoting *Carson v. Comm'r of Social Security*, 2022 WL 2525438, at *7 (E.D. Tex. May 25, 2022)), rec. adopted, 2022 WL 16927799 (N.D. Tex. Nov. 14, 2022); *see also Myers v. Saul*, 2021 WL 4925993, at *8 (W.D. Tex. Sept. 3, 2021) ("[T]he ALJ is not required to have a medical opinion that matches his RFC determination.").

One of the medical opinions the ALJ considered was by Yujin Fan, M.D. (Dr. Fan). *See* Tr. 21. As part of her thorough and well-reasoned written decision, the ALJ noted that Dr. Fan opined Plaintiff "could lift less than 10 pounds frequently and 10 pounds occasionally;" "could not be on his feet for more than 2 hours a day;" "could occasionally reach, handle, and finger;" "could perform repetitive

7

activity with the hands for 30 minutes at a time;" "required rest breaks of 4 hours a day during an 8-hour workday;" and "would likely miss an average of 3 or more days a month." Tr. 21 (citing Ex. 18F, 2-4, 8).

Plaintiff asserts "the ALJ found that a limitation to performing repetitive activity for 30 minutes at a time is supported by the evidence of the record" yet, the ALJ "erred in failing to include such limitation in [the ALJ's] RFC findings," Pl.'s Br. 13, because the RFC instead stated Plaintiff can "frequently handle bilaterally." Tr. 17. Plaintiff contends the ALJ found that Dr. Fan's opinion that Plaintiff "is limited to performing repetitive activity for 30 minutes at a time 'is also consistent with the overall record, as [Plaintiff] reportedly could type up to 30 minutes at a time.'" Pl.'s Br. (citing Tr. 21). And, because the ALJ found these limitations to be supported, the limitations should have been included in the RFC finding. Pl.'s Br. 15. By failing to do so, the "ALJ failed to build an 'accurate and logical bridge' between the documented evidence . . . and her ultimate RFC determination." Pl.'s Br. 15 (quoting *Price v. Astrue*, 401 Fed. Appx. 985, 986 (5th Cir. 2010)).

The Commissioner, however, argues that Plaintiff's argument "is premised on a misstatement of the ALJ's findings." Def.'s Br. 5. The ALJ's determination about Dr. Fan's statements was that Dr. Fan's opinion was "persuasive in part." Def.'s Br. 6. Thus, "merely finding that certain elements of a medical opinion are persuasive does not constitute a finding of fact by an ALJ regarding the [Plaintiff's RFC]." Def.'s Br. 6. (citing Tr. 21). And, regardless, "[t]he regulations that govern

8

assessment of medical opinions specifically bar Plaintiff's proposition that by finding a medical opinion persuasive, the ALJ has constructively adopted that opinion as part of the [Plaintiff's RFC]." Def.'s Br. 7.

The Commissioner's construction of the record more accurately reflects the ALJ's determination. As the Commissioner points out, the ALJ found Dr. Fan's medical opinion "persuasive in part." Tr. 21. The portion the ALJ found persuasive was Plaintiff's ability to perform repetitive activity with Plaintiff's hands for 30-minutes. Tr. 21 (noting that Dr. Fan examined Plaintiff's "findings of decreased range of motion with bony enlargement of the wrists, but generally mild tenderness and swelling (Exhibit 14F; 18F)"). The ALJ also concluded that this portion was supported by Plaintiff's testimony that Plaintiff "could type up to 30 minutes at a time. (Exhibit 18F/7)." Tr. 21.

However, the ALJ found that Dr. Fan's opinion that Plaintiff was limited to <u>only,</u> or up to, 30 minutes was not supported by other portions of the record. Tr. 21. ("[T]he occasional manipulative limitations are not supported by the generally mild objective findings."). For example, Plaintiff reported "performing activities requiring good use of the hands, including doing art for 2 hours at a time, playing video games for 3 hours at a time, performing part time data entry work, and driving" which undercuts the assertion that Plaintiff is limited to <u>only</u> 30 minutes. Tr. 21 (citing Exhibit 5E; 10F; 13F). And the ALJ's analysis of Dr. Fan's opinion did not stop there; rather, the ALJ continued:

> Concerning the lifting limitations and ability to be on his feet, Dr. Fan's opinion treatment notes do not support such limitations, as the clinical findings were typically mild. (Exhibit 14F; 18F). Likewise, the overall record does not reveal significant ongoing findings of weakness in the upper and lower extremities nor are there ongoing gait abnormalities. (See Exhibit 7F). Lastly, the overall record does not support the need for 4-hour rest breaks or missing 3 days or more a month. During the claimant's partial hospitalization, there are only 2 documented absences, one of which was a migraine (Exhibit 16F/60), and the other was unrelated to his impairments, noting that his pet was sick (Exhibit 16F/63). Thus, his attendance record during the program does not support Dr. Fan's opinion.

Therefore, the more appropriate conclusion of the ALJ's findings regarding Dr. Fan's opinion, was that the ALJ agreed Plaintiff could perform repetitive activities with Plaintiff's hands for 30 minutes, but not <u>only</u> 30 minutes. Everything else from Dr. Fan's opinions was contradicted by other portions of the record. Therefore, the Court should conclude that the ALJ did not adopt Dr. Fan's opinion, and thus did not err when she did not include the same limitations in Plaintiff's RFC.

    II.    <u>The ALJ's hypothetical questions to the VE were not defective.</u>

Plaintiff asserts that because the hypothetical question to the VE "failed to include [Plaintiff's] limitation to performing repetitive activities for 30 minutes at a time" it was defective. Pl.'s Br. 16 (first citing *Gary P. v. Saul*, 2021 WL 3518534, at *6 (N.D. Tex. July 19, 2021), rec. adopted 2021 WL 3516238 (N.D. Tex. Aug. 10, 2021) ("The hypothetical question posed to the VE suffers from the same defect as the ALJ's RFC determination: the hypothetical did not encompass all of limitations recognized by the ALJ"); then citing *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir.

1994) (noting that a hypothetical question posed to the vocational expert by the ALJ must "incorporate reasonably all disabilities of the claimant recognized by the ALJ")).

However, because the ALJ did not recognize that only "30 minutes at a time," was a limitation, the hypothetical question was not defective. The ALJ's hypothetical question to the VE reasonably incorporated the claimant's limitation because the hypothetical person posed to the VE included "frequent bilateral handling," which was the limitation the ALJ determined was supported. *See* Tr. 59. (Transcript).

In addition, the record reflects that upon the ALJ completing her questioning of the VE, Plaintiff's attorney only asked about "less than occasional handling," and not a specific 30-minute time limit. Tr. 61. (Transcript). As a result, Plaintiff's lawyer was "afforded the opportunity to correct deficiencies in the ALJ's question by mentioning or suggesting to the vocational expert any purported defects in the hypothetical question." *Bordelon v. Astrue,* 281 Fed. App'x. 418, 423 n. 7 (5th Cir. 2008) (citation omitted). Thus, Plaintiff's argument fails for this reason as well. *See* Def.'s Br. 8 ("A claimant's failure to raise an issue regarding the vocational expert's testimony results in unchallenged testimony that the ALJ may properly rely upon to decide the claim) (citing *Carey v. Apfel,* 230 F.3d 131, 146 (5th Cir. 2000)); *see also Bowling,* 36 F.3d at 435-36.

Hence, the Court should find that the hypothetical question posed to the VE was not defective.

> III. The ALJ did not improperly substitute the ALJ's own medical judgment to determine Plaintiff's RFC.

Plaintiff also argues that the ALJ relied on her own lay opinion to determine Plaintiff's limitations in the use of Plaintiff's upper extremities, namely that Plaintiff can "frequently handle bilaterally." Pl.'s Br. 19-20.

"Determining a [claimant's RFC] is the ALJ's responsibility, and [the ALJ] has the authority and duty to weigh the evidence and reach any conclusion supported by substantial evidence." *Gonzales v. Astrue*, 231 F. App'x 322, 324 (5th Cir. 2007) (per curiam). Under the current regulations, ALJs do "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." 20 C.F.R. § 404.1520c(a); *Stephens v. Saul*, 2020 WL 7122860, at *5 (N.D. Tex. Dec. 4, 2020) (citation omitted); *accord Winston v. Berryhill*, 755 F. App'x 395, 402 n.4 (5th Cir. 2018) (citation omitted). And, in determining a claimant's RFC, ALJs are not limited to simply adopting one or more medical opinions from the administrative record; rather they may consider all the evidence in the record. *Gutierrez v. Barnhart*, 2005 WL 1994289, at *7 (5th Cir. Aug. 19, 1995). Even the absence of medical opinions does not necessarily render a record inadequate to support an ALJ's RFC determination. *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995); *see also Joseph-Jack v. Barnhart*, 80 F. App'x 317, 318 (5th Cir. 2003) (rejecting argument that there was no substantial evidence "because the record was devoid of a [RFC] assessment by a medical source"). But "as a non-medical professional, the ALJ is

not permitted to draw his own medical conclusions from some of the data, without relying on a medical expert's help." *Kenneth S. v. Saul,* 2019 WL 3881618, at *5 (N.D. Tex. July 31, 2019) (Horan, J.), *adopted by* 2019 WL 3859653 (N.D. Tex. Aug. 15, 2019) (Lindsay, J.) (internal quotations omitted) (quoting *Frank v. Barnhart,* 326 F.3d 618, 621-22 (5th Cir. 2003)). ALJs must resist the urge to "play[ ] doctor" and make independent assessments of raw medical data. *Kenneth S.,* 2019 WL 3881618, at *7.

Plaintiff argues that "[t]he only assessment from a medical expert on the effect of [Plaintiff's] rheumatoid arthritis and degenerative changes of the hands and wrist on his ability to reach, handle, and finger . . . was Dr. Fan's treating physician's opinion." Pl.'s Br. 21. Therefore, Plaintiff posits, because the ALJ failed to include Dr. Fan's limitation of "repetitive activities with use of upper extremities for 30 continuous minutes," the ALJ used her own interpretations of the clinical findings—essentially playing doctor. *See* Pl.'s Br. 21. Commissioner, on the other hand, contends that the ALJ properly relied on the full evidence of the record. (citing *Taylor,* 706 F.3d at 602-03 ("What [Plaintiff] characterizes as the ALJ substituting his opinion is actually the ALJ property interpreting the medical evidence to determine his capacity to work.")).

Here, Plaintiff again mischaracterizes the record. First, the ALJ stated "after careful consideration of the evidence . . . the [Plaintiff's] medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the [Plaintiff's] statement concerning [the] intensity, persistence, and

limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." Tr. 19. For example, the ALJ generally found that the treatment records typically reported improvement with treatment, such as:

(1) In December 2019 where Plaintiff "denied having pain on the increased Remicade dose," Tr. 19 (citing Ex. 8F (MPP Infusion Center Medical Records),

(2) In May 2020—after Plaintiff discontinued Remicade in March due to inefficacy and started Simponi Aria, *id.* (citing Ex. 9F (Imran Iqbal, MD Treatment Records))—Plaintiff reported "80% improvement," *id.* (citing 12F (Progress Notes from Rheumatology Associates), and

(3) In December 2020—after changing rheumatology providers in August and starting on Plaquenil and Orencia in October, *id.* (citing Ex. 14F), Plaintiff reported experiencing much less pain on Orencia, and denied needing to take meloxicam anymore, *id.* (citing Ex. 14 F (Officer Treatment records from Texas Medical and Surgical Associates Rheumatology).

Second, as for Plaintiff's own reports of the intensity, persistence, and limiting effects of Plaintiff's symptoms, the ALJ found these only partially persuasive because of the inconsistencies within Plaintiff's medical reports and within Plaintiff's testimony. Tr. 20; *see e.g.,* (Plaintiff claimed to sleep for 18 hours in Exhibit 9E, but also indicated doing household chores and driving to the grocery

store and shops weekly in Exhibit 5E.) For example, on one hand, Plaintiff reported only being able to handle for up to 30 minutes at a time, yet Plaintiff also reported being able to "do art for up to 2 hours at a time, care for plants, perform part time data entry, and play video games for up to 3 hours at a time." Tr. 20 (citing Testimony and Ex 10F, 13F).

Third, the ALJ also concluded that the objective findings supported the RFC. For example, "the x-rays and MRI show degenerative and erosive changes, but there is no indication that these were characterized as moderate to severe," Tr. 19; "the findings of tenderness and synovitis were generally characterized as mild," Tr. 19 (citing Ex. 7F/5, 10; 9F/15; 12F/41, 58; 14F/4, 6, 9; 18F/8); "the additional findings were generally mild, such as minimal tenderness and swelling of the right hand's second and third MTP joints," Tr. 19 (citing Ex. 14F/4, 9; 18F/8); and "earlier rheumatology notes through mid-2020 typically showed no synovitis, warmth or tenderness of the hands, elbows, hips, knees, ankles, MTP joints and toes." Tr. 20 (citing Ex. 7F/5, 13, 19; 9F/9, 15; 12F/41, 58; see Exhibit 8F/21).

Lastly, the ALJ also considered assessments from the State Agency Medical Consultations (SAMC), Dr. Douglass and Dr. Spoor, and found that their assessments were supportive of the RFC finding of "light work." However, neither SAMC concluded that Plaintiff required manipulative limitations. *See* Tr. 70 (Ex. 1A) & 120 (Ex. 6A). The ALJ did not find this portion of their assessment persuasive based on other portions of the record. Tr. 21.

The Commissioner also argues that the RFC determination is not "inherently inconsistent" with Plaintiff's claimed ability to use Plaintiff's hands for only up to 30 minutes. Def.'s Br. 3. "Light work involves lifting no more than 20 pounds at a time with frequent lifting and carrying of objects weighing up to 10 pounds." Def.'s Br. 3, FN 1. (citing 20 CFR §§ 404.1567(b), 416.967(b)). And, as the term is used in the agency policy, "frequent means occurring from one-third to two thirds of the time." Def.'s Br. 8, n. 2. (quoting SSR 83-10, 1983 WL 31251, at *6). For this RFC, therefore, Plaintiff may be required to handle between 20 to 40 minutes at a time. This determination is consistent with the SAMC's conclusion that no manipulative limitations were necessary, as well as Dr. Fan's conclusion that Plaintiff could use Plaintiff's hands up to 30 minutes.

While the ALJ declined to adopt in full Dr. Fan's and some other medical opinions on Plaintiff's limitations, the ALJ did not "play doctor" and independently determine Plaintiff's RFC based on the ALJ's own lay opinion of Plaintiff's limitations. Rather, as the ALJ's decision concludes, numerous objective findings from Plaintiff's medical providers and Plaintiff's testimony support the RFC determination. Therefore, the Court should find that substantial evidence supports the ALJ's RFC determination.

**Recommendation**

Because the ALJ applied the correct legal standards, and substantial evidence supports the ALJ's decision that Plaintiff is not disabled within the

meaning of the Social Security Act, the Court should AFFIRM the hearing decision in all respects.

**SO RECOMMENDED.**

February 21, 2023.

_____
REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1417 (5th Cir. 1996).